Citation Nr: 1132123 
Decision Date: 08/31/11 Archive Date: 09/07/11

DOCKET NO. 07-20 872 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Seattle, Washington


THE ISSUE

Entitlement to a higher initial evaluation for left knee degenerative arthritis, status post anterior cruciate ligament repair, currently evaluated as 10 percent disabling. 


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

C. Lawson, Counsel



INTRODUCTION

The Veteran served on active duty from December 1985 to August 2006.

This matter comes to the Board of Veterans' Appeals (Board) on appeal from a December 2006 rating decision by a Regional Office (RO) of the Department of Veterans Affairs (VA). The December 2006 rating decision granted service connection for the disability at issue and assigned it a noncompensable rating effective from June 2006. A September 2009 rating decision assigned a rating of 10 percent, effective from June 2006. 

The Veteran withdrew an appeal of the rating for aortic insufficiency, mitral regurgitation, and tricuspid regurgitation with scar in October 2009. The Board remanded the claim to the RO in November 2010. 


FINDINGS OF FACT

The Veteran's left knee disability is manifested by pain with some resulting limitation of motion; there is no additional functional loss due to pain, weakness, incoordination or fatigue to limit flexion to 45 degrees or to limit extension to 10 degrees; there is no recurrent subluxation or lateral instability; the left knee scar is not painful, unstable, deep, nor does it limit motion or function. 


CONCLUSION OF LAW

The criteria for a disability rating in excess of 10 percent for left knee degenerative arthritis status post anterior cruciate ligament repair have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2002); 38 C.F.R. §§ 4.40, 4.45, 4.71, Diagnostic Code 5003-5260 (2010).



REASONS AND BASES FOR FINDINGS AND CONCLUSION

Upon receipt of a complete or substantially complete application, VA must notify the claimant of the information and evidence not of record that is necessary to substantiate a claim, which information and evidence VA will obtain, and which information and evidence the claimant is expected to provide. 38 U.S.C.A. § 5103(a).

The notice requirements apply to all five elements of a service connection claim: 1) Veteran status; 2) existence of a disability; (3) a connection between the Veteran's service and the disability; 4) degree of disability; and 5) effective date of the disability. Dingess v. Nicholson, 19 Vet. App. 473 (2006).

The notice must be provided to a claimant before the initial unfavorable adjudication by the RO. Pelegrini v. Principi, 18 Vet. App. 112 (2004).

The notice requirements may be satisfied if any errors in the timing or content of such notice are not prejudicial to the claimant. Mayfield v. Nicholson, 19 Vet. App. 103 (2005), rev'd on other grounds, 444 F.3d 1328 (Fed. Cir. 2006).

It appears that the Veteran may not have been sent VCAA notice concerning his service connection claim before it was granted. The Board remanded the case to the RO in November 2010, and the RO furnished the Veteran with VCAA notice for a higher rating in December 2010. The December 2010 notice was followed by a supplemental statement of the case effectively readjudicating the claim. The notification substantially complied with the requirements of Quartuccio v. Principi, 16 Vet. App. 183 (2002), identifying the evidence necessary to substantiate a claim and the relative duties of VA and the claimant to obtain evidence; and Pelegrini v. Principi, 18 Vet. App. 112 (2004).

VA also has a duty to assist a claimant under the VCAA. VA has obtained service treatment records; assisted the Veteran in obtaining evidence; examined the Veteran for left knee arthritis in December 2008; and afforded the Veteran the opportunity to give testimony before the Board. All known and available records relevant to the issues on appeal have been obtained and associated with the Veteran's claims file; and the Veteran has not contended otherwise. The RO complied with the Board's November 2010 remand by providing the Veteran VCAA notice and readjudicating the claim. 

VA has complied with the notice and assistance requirements and the Veteran is not prejudiced by a decision on the claim at this time.

The Veteran contends that a higher rating or separate ratings are warranted for his left knee disability. Disability ratings are determined by the application of a schedule of ratings which is based on average impairment of earning capacity. 38 U.S.C.A. § 1155. 38 C.F.R. Part 4 contains the rating schedule. Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2010). 

Under 38 C.F.R. § 4.40, functional loss may be due to pain, supported by adequate pathology and evidenced by visible behavior on motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. Under 38 C.F.R. § 4.45, factors of joint disability include increased or limited motion, weakness, fatigability, or painful movement, swelling, deformity or disuse atrophy. 

Where functional loss is alleged due to pain upon motion, the provisions of 38 C.F.R. §§ 4.40 and 4.45 must be considered. DeLuca v. Brown, 8 Vet. App. 202, 207-08 (1995). Within this context, a finding of functional loss due to pain must be supported by adequate pathology, and evidenced by the visible behavior of the claimant. Johnston v. Brown, 10 Vet. App. 80, 85 (1997).

In Fenderson v. West, 12 Vet. App. 119 (1999), and in Hart v. Mansfield, 21 Vet. App. 505 (2007), the Court discussed the concept of the "staging" of ratings, finding that in cases where an initially assigned disability evaluation or an increased rating has been disagreed with, it was possible for a Veteran to be awarded separate percentage evaluations for separate periods based on the facts found during the appeal period. The Board concludes that the disability has not significantly changed, and so a uniform rating is warranted.

The Veteran seeks a higher rating than 10 percent for his left knee disability. He contends that he can not kneel due to scar tissue tenderness on his patella, that he has excessive instability and frequent joint locking, causing him to wear a brace, and that he frequently ices the joint after activities to reduce swelling and tenderness. He feels he should be awarded 10 percent for the surgical scar and another 10 percent for instability. 

The disability is rated under Diagnostic Code 5003-5260. Diagnostic Code 5003 indicates to rate degenerative arthritis which is established by X-ray findings based on limitation of motion under the appropriate Diagnostic Codes for the specific joint or joints involved. When limitation of motion of a specific joint is noncompensable under the appropriate Diagnostic Codes, a rating of 10 percent is for application for each such major joint affected by limitation of motion. 

Under Diagnostic Code 5260, leg flexion limited to 60 degrees warrants a noncompensable rating. Leg flexion limited to 45 degrees warrants a 10 percent rating. Leg flexion limited to 30 degrees warrants a 20 percent rating. 38 C.F.R. § 4.71a, Diagnostic Code 5260. 

Under Diagnostic Code 5261, leg extension limited to 5 degrees warrants a noncompensable rating. Leg extension limited to 10 degrees warrants a 10 percent rating. Leg extension limited to 15 degrees warrants a 20 percent rating. 38 C.F.R. § 4.71a, Diagnostic Code 5261. 

Under Diagnostic Code 5257, other knee impairment with slight recurrent subluxation or lateral instability warrants a 10 percent rating. A 20 percent rating is warranted for moderate recurrent subluxation or lateral instability. 38 C.F.R. § 4.71a, Diagnostic Code 5257. 

A knee disability can be rated for both limitation of leg flexion under DC 5260 and limitation of leg extension under Diagnostic Code 5261. See VAOPGCPREC 9-2004 (Sept. 17, 2004). 

On VA examination in August 2006, the Veteran complained of stiffness, weakness, swelling, a giving way sensation, lack of endurance, locking, and fatigability. He stated that his left knee was unstable and swelled occasionally. There was no functional impairment. On examination, his gait was normal and he required no assistive device. His lower extremity motor function was normal. The left knee was tender and there was a 4 centimeter scar from surgery which was well healed. Left knee flexion was to 140 degrees and extension was to 0 degrees. After repetitive use, there was an absence of pain, fatigue, weakness, lack of endurance, and incoordination. Medial and lateral collateral ligaments were within normal limits as were the anterior and posterior cruciate ligaments and the medial and lateral menisci. After repetitive use, there was no pain, fatigue, weakness, lack of endurance, or incoordination. The Veteran performed a treadmill stress test for almost 15 minutes. X-rays revealed amorphous appearing calcium in the joint space, accompanied by remote anterior cruciate ligament repair and a small patellar bursal effusion. Left knee bursitis status post anterior cruciate ligament repair was diagnosed.

Private treatment records from September 2007 and January and April 2008 reveal that the Veteran's gait, muscle tone, and strength were normal. 

On VA examination in December 2008, the Veteran complained of pain, weakness, stiffness, swelling, heat, a giving way sensation, lack of endurance, locking, fatigability, and dislocation of his left knee and joint. He reported a very unstable joint during running, shifting weight, and climbing stairs. He stated that his knee would lock with very sharp pain at any given movement, and that kneeling was difficult. He stated that his joint was becoming unstable and locks by causing sharp and shooting pain and swelling. He stated that the joint would fail several times daily and that he had difficulty using stairs and ladders, kneeling, and during weight transfer. Extended standing was impossible. Examination revealed an arthroscopic scar on the anterior left knee. It was level and had no tenderness, ulceration, or inflammation. The Veteran's posture and gait were normal. His feet showed no abnormal weightbearing pattern and he required no device. There was tenderness on the left anterior knee. Flexion was to 140 degrees and extension was to 0 degrees. After repetitive use, there was pain, fatigue, weakness, lack of endurance, and incoordination. Pain began at flexion of 135 degrees and extension of 0 degrees. There was 5 degrees additional limitation with repetitive use. Medial and lateral collateral ligaments were within normal limits, as were the anterior and posterior cruciate ligaments. Cruciate ligaments were normal. X-ray revealed a 2 millimeter bone spur on the medial tibial plateau and a soft tissue 2/4 millimeter calcification on the anterior joint. 

Based on a review of the evidence, the Board concludes that a disability rating greater than 10 percent is not warranted for the Veteran's service-connected left knee disability, even when 38 C.F.R. §§ 4.40, 4.45 are considered. The Veteran does not have left knee flexion limited to 45 degrees, or left knee extension limited to 10 degrees, even after repetitive use. Moreover, there is no persuasive evidence of additional functional loss due to pain, weakness, incoordination or fatigue to limit flexion or extension to allow for compensable ratings under Codes 5260, 5261. Although the criteria for compensable ratings under Codes 5260 and 5261 are not met, the RO has nevertheless assigned a 10 percent rating under Code 5003 which provides for such a rating as long as there is some limitation of motion objectively verified. Based on the evidence, there is no basis for assigning a rating in excess of the current 10 percent under Code 5260 or Code 5261, nor is there a basis for separate compensable ratings under these two Codes. The regulatory criteria are simply not met, even when the DeLuca factors are considered. 

Moreover, there is no persuasive evidence of left knee recurrent subluxation or lateral instability to allow for a separate compensable rating under Code 5257. In this regard, left knee ligaments were found to be within normal limits at the December 2008 examination. The Veteran has contended that his knee is unstable. However, it has been tested twice and no instability was reported. 

Other contentions are not supported, do not appear to be credible, or do not support a higher rating. The examination reports show a nearly normal left knee with no need for a brace, and that he performed a treadmill test for about 15 minutes. His complaints to the contrary of examination report findings do not appear to be credible, as the examiner's findings rebut them. 

The Board acknowledges the contention that a separate 10 percent rating should be assigned for the left knee scar. Diagnostic Codes 7800 through Diagnostic Code 7805, were revised effective October 23, 2008. They were specifically limited to claims filed on or after October 23, 2008. Here, the Veteran's initial claim (from which the initial rating action stems) for service connection was received prior to that date. Accordingly, the revised schedular rating criteria are not applicable in this case and those in effect prior to October 23, 2008, must be considered.

As the site of the scar is the left knee, the rating criteria for disfigurement of the head, face, or neck under Diagnostic Code 7800 do not apply. Diagnostic Code 7801 does not apply because the scar is not deep nor does it limit motion. Diagnostic Code 7802, pertaining to a superficial scar, covering 144 sq. inches or more without limited motion, does not apply because the scar does not cover 144 sq. inches. Diagnostic Code 7803, pertaining to an unstable scar, does not apply because the scar is stable. Diagnostic Code 7804, pertaining to painful scar, does not apply because the scar is not shown to be painful. Diagnostic Code 7805, pertaining to limitation of function, does not apply to the extent there is no limitation of function impairment due to the scarring. In sum, there is no basis for assigning a separate compensable rating for the scar. 

After reviewing the totality of the evidence, the Board finds that the preponderance of the evidence is against entitlement to a rating in excess of the current 10 percent for the Veteran's left knee disability. 38 U.S.C.A. § 5107; Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1991). Should the disability increase in severity in the future, the Veteran may always file a claim for an increased rating.



ORDER

A rating in excess of 10 percent for left knee degenerative arthritis status post anterior cruciate ligament repair is not warranted. The appeal is denied. 



____________________________________________
ALAN S. PEEVY
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs